WOOLF v. BARNES et al.

(Supreme Court, Appellate Division, First Department.   May 20, 1905.)

FRAUD—CONTRACTS—CORPORATIONS—SHARES OF STOCK—SALES OF—ACTIONS—INJUNCTIONS.

Plaintiff, suing as trustee for his wife, alleged that, with the object of placing the business of defendant corporation on a sound financial basis, he agreed orally with its president and defendant B. that if the latter two would raise money by selling stock, and would manage the company so as to place it on such basis, within five years from the execution of a written agreement to be prepared, they should receive respectively 15 and 45 per cent. of the unsold stock remaining in B.'s hands when such object was attained, otherwise they were to have no compensation; that in pursuance of the oral agreement, and in order to facilitate sales, plaintiff transferred and delivered to B. all the certificates of stock of the company, which, though standing on its books in plaintiff's name, belonged to his wife; that B. fraudulently procured the execution of a written agreement by falsely representing that it embodied the terms of the oral agreement, whereas it differed materially, entitling B. absolutely to 45 and the president to 75 per cent. of unsold stock; that the president assigned his interest therein to B., thereby enabling the latter to acquire control of the company to the exclusion of any participation therein by plaintiff or his wife. Defendant B. denied the alleged fraud, and claimed that the written instrument expressed the prior oral agreement. *Held*, that plaintiff was entitled to have defendant B. enjoined, until final determination of the action, from selling any more of the stock in his possession.

Appeal from Special Term, New York County.

Action by Albert E. Woolf, as trustee, etc., against Reon Barnes and the Chemical & Electrical Company, impleaded, etc.   From an order denying plaintiff's motion for a temporary injunction, he appeals.   Reversed.

See 93 N. Y. Supp. 219.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Frank J. Dupignac, for appellant.

George E. Morgan, for respondents.

PATTERSON, J.   The plaintiff appeals from an order denying a motion for an injunction pendente lite.   He sued as trustee for his wife, asking to have a written agreement made between himself and the defendant Barnes reformed; to have it declared that the relations established between the defendant Barnes and himself under such agreement, when reformed, be decreed to be terminated; that the defendant Barnes be ordered and adjudged to render an account of his proceedings under the agreement concerning shares of stock, the subject thereof; that the corporation defendant be ordered and adjudged to account to the plaintiff for moneys paid into its treasury from the proceeds of sales of its stock made by the defendant Barnes, and that such defendant be required to deliver to the plaintiff shares of stock standing in the plaintiff's individual name, except such as have been actually sold; that it be decreed that the defendant Barnes has violated the terms of the agreement made between the plaintiff and himself, and that Barnes

be enjoined from selling or otherwise disposing of shares of stock intrusted to him under the agreement, and also be enjoined and restrained from disposing of the assets of the corporation, except "in the regular and honest course of business, until the final decree of the court." The application for an injunction was made upon the complaint and upon affidavits of the plaintiff and of his wife; that of the plaintiff containing a reiteration and amplification of the matters alleged in the complaint.

It appears that the plaintiff was the discoverer of a chemical compound known as "electrozone"; that he made application for a patent upon his invention or discovery. Prior to the granting of letters patent he assigned all his right, title, and interest therein and thereto to his wife, and a patent was issued to her. The defendant corporation, the Chemical & Electrical Company, was organized in the latter part of the year 1899, to manufacture under that patent. Capital stock of $2,000,000 was issued, divided into 20,000 shares of the par value of $100 each; 2,000 of the shares being preferred stock, and 18,000 common stock. In the month of February, 1900, one George W. Stockley was the president of the defendant corporation, and the plaintiff alleges that Stockley introduced the defendant Barnes to him as a person of integrity and ability and skill in business, and who had a wide and influential acquaintance with men of wealth; that negotiations were entered into by stockley and Barnes and the plaintiff with the object of devising a plan for placing the business of the corporation upon a sound financial basis, and that as the result of the negotiations an oral agreement was made between the parties named to the effect that Barnes and Stockley would raise moneys by a sale of stock, and manage the company so as to place it upon a sound, financial, paying basis, and would do so within five years from the execution of a written agreement which was to be prepared for execution by the parties; that the plaintiff, in order to enable Barnes to sell the stock more easily, agreed to and did indorse in blank all the certificates of stock, which seem to have represented the whole capital stock, and which stood in his name upon the books of the company, but he asserts that they belonged to his wife, and that the same were delivered to Barnes upon the trust that the preferred stock should be sold at not less than par, and that one share of common stock should be given as a bonus with each share of preferred stock sold, and that "absolutely no other disposition of the stock was to be made by the defendant Barnes except with the consent of the plaintiff"; that all the funds arising from a sale should be paid into the treasury of the company by Barnes; and that it was agreed that Barnes and Stockley should not be entitled to any compensation unless the defendant company was placed upon a sound, financial, paying basis, and if at the end of five years (or before) that result was attained by the defendants Barnes and Stockley, the former was to receive 45 per cent. and the latter 15 per cent. of the stock unsold in the hands of Barnes, as trustee, and the remaining 40 per cent. thereof to be returned to the plaintiff. The plaintiff asserts that on the 15th of November, 1900, the defendant Barnes presented

to him a paper, which he (Barnes) alleged embodied all the terms and conditions of the oral agreement; that the paper did not contain many of the material matters agreed upon orally by the parties, and that the plaintiff was induced to sign the paper, which was in the form of a complete agreement, in consequence of Barnes stating that the writing as presented contained all the matters agreed upon orally; that they were put in legal form as far as necessary, and that the plaintiff must rely upon the integrity of Barnes, and not hesitate to execute promptly any paper that Barnes might wish him to execute; that Barnes stated that plaintiff did not need the advice of a lawyer, and did not care whether he made a penny out of the agreement; that the plaintiff called Barnes' attention to inconsistencies between the paper as presented and the oral agreement, and that Barnes said that the provisions of the agreement were made for the special protection and benefit of the plaintiff, no matter how inconsistent such provisions appeared to be; that immediately after the agreement was executed the plaintiff requested Barnes to furnish him with a copy thereof, but a copy was not furnished for a long time, and then only after demand by counsel for the plaintiff; that when a copy was furnished Barnes' attention was called to the differences between the oral agreement and the agreement as reduced to writing, and that Barnes then promised that "a corrective and modifying agreement should be prepared forthwith," which was never done. An attorney for the plaintiff swears that Barnes admitted to him that the written agreement was defective in several respects. The plaintiff also asserts that immediately after the certificates of stock were indorsed by him Barnes began to treat, and continues now to treat, the stock as his own personal property; that Barnes has purchased all the right, title, and interest which the defendant Stockley had in the agreement relating to the stock of the company, and thereby acquired the control of the company, and seeks to deprive the plaintiff of any control over or voice in the management of the company. There are then allegations of bad faith and fraud on the part of Barnes in the administration of the affairs of the company, and of violations, in many respects, of the rights of the plaintiff as trustee for his wife. The defendant Barnes denies all the allegations made against him of fraud, and claims that the written instrument was expressive of what was actually agreed upon between the plaintiff and himself. He also claims that the plaintiff's relations to the subject-matter of the agreement were personal, and not representative, and that he (Barnes) knew nothing of the plaintiff's wife being interested in or making any claim to the shares or any of them. He alleges that the agreement, when drawn, was handed to the plaintiff, left with him, and that its execution was after full deliberation by the plaintiff. But it is evident that Barnes did know that Mrs. Woolf made claim to this stock or some of it, for on the 20th day of November, 1900—five days after the execution of the agreement between the plaintiff and himself—he caused another instrument to be executed by the plaintiff's wife confirming the agreement entered into between Albert E. Woolf, Stockley, and himself on the 15th of No-

vember, 1900. Notwithstanding this, Barnes represents that he never knew of any claim to the stock by the plaintiff's wife until the month of February, 1904. The instrument of confirmation was procured almost simultaneously with the execution and delivery of the main agreement. Barnes swears that it was delivered to Woolf, was retained several days, and then returned to him. That being so, it is a fair presumption, if the plaintiff is to be believed, that Mrs. Woolf was induced to sign it by her husband, he connecting it with the antecedent agreement, and procuring it to be executed under the same belief and in reliance upon the same statements he alleges were made to him by Barnes when the first agreement was signed.

The differences between the provisions of the agreement of November 15th and what the plaintiff alleges to have been the antecedent oral agreement are wide and important. By the alleged oral agreement Stockley and Barnes were not to be interested as owners of any of the shares until the expiration of a certain period of time or the happening of a certain event, namely, the establishment of the corporation on a sound financial basis; and the disposition of stock was to be with the approval of Woolf as well as of the other parties. By the written agreement, as executed, Barnes is entitled absolutely to 45 per cent. of all unsold stock and Stockley to 15 per cent. thereof. The real point in issue is whether there was fraud perpetrated by Barnes on Woolf in procuring the latter to sign the agreement of November 15th, the same fraud tainting the confirmatory instrument signed by Mrs. Woolf a few days thereafter. It is unnecessary now to inquire particularly into the administration of the affairs of the company by either Stockley or Barnes. By the writing of November 15, 1900, Stockley, acquiring an absolute interest of 15 per cent. by assigning or selling that interest to Barnes, has enabled the latter to acquire the control of the company to the exclusion of any participation therein by Mr. or Mrs. Woolf. It seems to have been the intention of the parties that sales of the stock held by Barnes in trust should be made only as approved from time to time by the parties. In the written agreement of November 15th it is said that sales shall be made from time to time as Barnes deems advisable, and as may be approved by a majority interest of the respective parties thereto. Mr. Woolf's claim is that by the oral understanding, which was to have been incorporated in the written agreement, the interests were to be kept separate; that Stockley was to receive 15 per cent. for services which were to be rendered by him during the whole period of five years, and that he could not assign or sell whatever contingent interest he might have so as to enable Barnes to get the complete control of the corporation. Stockley does not make an affidavit, but, as said before, the defendant Barnes denies in toto all the material allegations of the plaintiff respecting the oral agreement. Nevertheless, the circumstances of the case are such that the plaintiff should be protected from a sale of the stock remaining in the hands of the defendant Barnes until the issues are tried. Barnes has sold shares of stock, receiving therefor the sum of $165,000, and that

money he has paid into the treasury of the company. It does not appear that it is now necessary to sell more shares for the purposes of the company, and it is not perceived how any detriment can happen to the company by restraining Barnes from making further sales until the controversy between the plaintiff and himself can be judicially settled; and much harm may be done the plaintiff if the shares are sold, and it should be finally determined that the oral agreement should prevail, and that its purpose has been accomplished, and the plaintiff, as trustee, is entitled to a return of a large portion of the stock still held by Barnes.

On the whole case as now presented we are of the opinion that Barnes should be enjoined until the final determination of the action from selling any more of the shares now in his possession, but it must be upon the plaintiff giving a sufficient undertaking. The order denying an injunction must be reversed upon the plaintiff giving an undertaking in the sum of $2,500, and stipulating to try the cause as soon as reached on the day calendar of the court. The injunction will be strictly limited to a restraint of the sale of the shares remaining in the hands of Barnes in trust, and will extend to nothing else.

The order appealed from should therefore be reversed, without costs, and the motion granted, upon the conditions and to the extent above stated, without costs. All concur.